IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| CANDID VENTURES, LLC, | : | Case No. 1:24-cv-528 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| NESTLINGS, INC., et al., | : | |
| | : | |
| Defendants. | : | |

### ORDER GRANTING MOTION FOR
### TEMPORARY RESTRAINING ORDER (Doc. 2)

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order (Doc. 2).[1] For the reasons explained below, the Court **GRANTS** Plaintiff's motion and **ISSUES** a temporary restraining order.

### FACTS

Plaintiff Candid Ventures LLC ("Candid Ventures") is the exclusive shareholder of Defendant Nestlings Inc.'s ("Nestlings") Series Seed Preferred Stock ("Preferred Stock"). (Compl., Doc. 1, ¶ 1.) As the exclusive Preferred Stock shareholder, Candid Ventures was entitled by Nestling's Articles of Incorporation (the "Articles") to elect a Preferred Director. (*Id.* at ¶ 15-17.) Furthermore, the Articles prohibited Nestlings from dissolving the corporation, modifying the Preferred Stock, or selling any corporation

---

[1] Defendant Dew Ventures, Inc. filed a Motion to Dismiss for Lack of Jurisdiction and opposed the issuing of a temporary restraining order. (*See* Docs. 12, 13.) The Court will consider this motion in due course. This Order only addresses Plaintiff's Motion for Temporary Restraining Order (Doc. 2). Plaintiff has not filed a Motion for Preliminary Injunction at this time.

assets below market value, unless approved by the Preferred Director. (*Id.* at ¶ 18.)

Candid Ventures and Nestlings also entered into a Series Seed Preferred Stock Purchase Agreement and an Investor's Rights Agreement. (Compl., Doc. 1, ¶ 20.) Under the Investor's Rights Agreement, Nestlings agreed, among other things, to not incur debt greater than $100,000 and to not "sell, assign, license, or encumber material technology or intellectual property," without the Preferred Director's approval. (*Id.* at ¶ 21; Investor's Rights Agreement, Doc. 1-3, Pg. ID 105.)

Then, Defendants Rajashekar Basavaraju and Sowmya Satish, both Nestlings officers, requested additional funding from Candid Ventures. (Compl., Doc. 1, ¶ 23.) Candid Ventures responded by loaning Nestlings $51,000 through the execution of two promissory notes ("Candid Ventures' Notes" or "Notes"), listing all of Nestling's assets as collateral. (*Id.* at ¶ 78-81.) These promissory notes were filed and perfected with the California Secretary of State on August 13, 2024. (*Id.* at ¶ 24.) After executing the promissory notes, Basavaruju and Satish travelled to Cincinnati, Ohio, to meet with Candid Ventures investors. (*Id.* ¶ 26.) The investors provided Basavaruju and Satish with due diligence requests. (*Id.*) Basavaruju and Satish, however, ultimately failed to supply the investors with the due diligence reports because the pair had failed to properly maintain corporate records. (*Id.* at ¶ 28.)

Due to Basavaraju and Satish's inability to provide corporate records, Candid Ventures demanded that Nestlings produce — among other things — specific information such as "balance sheets, income statements, [and] cashflow statements." (Compl., Doc. 1, ¶ 30.) In response, Nestlings produced a capitalization table reflecting a $334,000 debt to

2

Defendant Dew Ventures. (*Id.* at ¶ 32.) This debt, however, was incurred without the required approval of the Preferred Director. (*Id.* at ¶ 33.) Basavaruju and Satish then attempted to ratify the unauthorized debt through Nestlings' board approval, but the Preferred Director voted against ratification. (*Id.* at ¶ 34.)

Basavaraju later produced four promissory notes dated between December 2022 and July 2024, which showed that Nestlings accepted the $334,000 from Dew Ventures and listed all of Nestlings' assets as collateral ("Dew Ventures' Notes"). (Compl., Doc. 1, ¶ 35.) The "metadata," however, for each of Dew Ventures' Notes show that they were not created until the last weeks of July 2024. (*Id.* at ¶ 36.)

On August 9, 2024, Dew Ventures offered to purchase 50% equity of Nestlings, on the condition that Candid Ventures waive all of its rights as a shareholder, grant Dew Ventures unilateral decision-making authority, and grant Dew Ventures "the right to assume 100% of Nestlings on a 'debt-free basis' without consideration to Candid Ventures' equity holdings in Nestlings." (Compl., Doc. 1, ¶ 42.) Candid Ventures rejected this offer. (*Id.* at ¶ 43.) On August 15, 2024, Nestlings' board voted to dissolve the corporation. (*Id.* at ¶ 44.) The Preferred Director agreed to this action on the condition that Nestlings provide a winddown proposal with a list of company assets, accounts, and an order of the distribution of assets. *Id.* Nestlings has not provided Candid Ventures with these materials. (*Id.* ¶ 45.)

On September 13, 2024, Dew Ventures sent a letter to Nestlings demanding payment of the $334,000 debt, or alternatively that Nestlings transfer all of its assets to Dew Ventures. (Compl., Doc. 1, ¶ 46.) On the same day, Candid Ventures also demanded

3

repayment of its Notes, which were perfected and filed before any other credit given to Nestlings. (*Id.* at ¶ 47.) On September 18, 2024, Nestlings notified Candid Ventures that it had rejected Candid Ventures' payment demand in favor of transferring all assets to Dew Ventures. (*Id.* at ¶ 49.) On September 19, 2024, Candid Ventures wrote to Nestlings and Dew Ventures, notifying them that Candid Ventures' Notes have priority over Dew Venture's Notes. (*Id.* at ¶ 50.) Despite this notice, Nestlings and Dew Ventures agreed to "convey all of Nestlings' company assets to Dew Ventures." (*Id.* ¶ 51.)

On September 24, 2024, Candid Ventures brought this action, seeking a temporary restraining order—as well as extended injunctive relief—preventing the transfer of Nestlings' assets to Dew Ventures, a declaratory judgment voiding Dew Ventures' Notes, breach of contract against Nestlings, tortious interference of contract against Dew Ventures, breach of fiduciary duties and fraud against Basavaraju and Satish, conspiracy by all Defendants, and a demand for accounting by Nestlings. (*See* Compl., Doc. 1.)

## LAW & ANALYSIS

Federal Rule of Civil Procedure 65 empowers the Court to issue a temporary restraining order against an adverse party. Fed. R. Civ. P. 65(b). The purpose of issuing a temporary restraining order is to preserve the status quo. *CUC Properties, LLC v. 1680 Carillon, LLC*, No. 1:12-CV-71, 2012 WL 540560, *1 (S.D. Ohio Feb. 17, 2012). A district court may issue an ex parte temporary restraining order only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice

4

and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

Plaintiff filed a verified complaint clearly showing that immediate and irreparable harm would result before the adverse party can be heard, and counsel certified efforts to give notice and why further notice should not be required. (*See* Compl., Doc. 1, Pg. ID 24.) Specifically, Defendants' recent signing of the agreement to transfer all of Nestlings' assets to Dew Ventures demonstrates the need for immediate relief to preserve the status quo. (*Id.* at ¶ 25-53.) *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974) (explaining that such orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing"). To the extent notice has not been made to Defendants, Plaintiff's verified complaint and certification comports with Rule 65(b)'s requirements.

The Court must consider four factors when determining whether to grant or deny a temporary restraining order: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; (4) whether the public interest would be served by issuance of the injunction." *Id.* (citing *Chabad of S. Oh. & Congregational Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004)). "These are factors to be balanced, not prerequisites that must be met." *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004).

I.  **Likelihood of Success**

"The moving party need only show a likelihood of success on the merits on one claim where there are multiple claims at issue in the complaint." *J.P. Morgan Securities, LLC v. Duncan*, No. 2:22-CV-11732, 2022 WL 3325514, *4 (E.D. Mich. Aug. 11, 2022). This Court will consider the likelihood of Plaintiff's success on its breach of contract claim against Nestlings.

On its breach of contract claim, Plaintiff alleges, in part, that Nestlings entered into the Notes with Candid Ventures, in which Candid Ventures loaned Nestlings an amount totaling $51,000. (Compl., Doc. 1 ¶¶ 78-80.) Both Notes were secured by "all assets of the [Nestlings], including but not limited to hardware, software, intellectual property, customer contracts, cash or cash equivalents, bank accounts, or any other intangible property" owned by Nestlings. (*Id.* at ¶ 81.) Candid Ventures' Notes matured on June 1, 2024, and September 13, 2024, respectively. (*Id.* at ¶¶ 78, 80.) Although Plaintiff made a written request for repayment of Candid Ventures' Notes on September 13, 2024, Nestlings has yet to repay Plaintiff. (*Id.* at ¶¶ 82-87.)

As Candid Ventures' Notes both have a choice of law provision dictating that Ohio law will govern any disputes (Notes, Docs. 1-4, 1-5, Pg. ID 117-18), the Court will analyze the likelihood of success on the merits based on Ohio breach of contract law. *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) ("When interpreting contracts in a diversity action, we also generally enforce the parties' contractual choice of governing law."). Under Ohio law, the essential elements of a breach of contract claim are: "(1) the existence of an enforceable contract; (2) the performance (or excuse from performance) of

6

the contractual obligations by the party seeking relief; (3) breach or failure to fulfill contractual obligations by the other party; and (4) damages suffered by the party seeking relief as a result of the breach." *CUC Properties*, 2012 WL 540560 at *2.

Considering the evidence provided to the Court at this time, Plaintiff has established each element. Plaintiff and Nestlings executed two Notes that detail the terms of the contracts. (Notes, Doc. 1-4, 1-5.) By evidence of the Notes themselves, Plaintiff has satisfied the first element of breach. Plaintiff also alleged that it paid the amounts promised in the Notes to Nestlings. In doing so, Plaintiff has performed its contractual obligations, satisfying the second element. Plaintiff further alleges that it requested repayment on the date agreed upon in the Notes. (*Id.* ¶ 82.) Yet, Nestlings has refused to repay Plaintiff, constituting a breach of contract on the part of Nestlings. (*Id.*) Finally, as a result of its breach, Nestlings has deprived Plaintiff of money that Plaintiff is rightfully owed, resulting in damages. Thus, Plaintiff has established, for the purposes of a temporary restraining order, a strong likelihood of success on the merits of its breach of contract claim.

## II.     Irreparable Harm

A sufficient showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction" and receives "increased emphasis" as a factor within the temporary restraining order context. *Blount Pride, Inc. v. Desmond*, 690 F. Supp. 3d 796, 807 (E.D. Tenn. 2023) (citations omitted). A harm is irreparable when it "is not fully compensable by monetary damages." *Overstreet v. Lexington–Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).

7

Plaintiff argues that it would suffer irreparable harm both as a secured creditor and a preferred shareholder if the temporary restraining order is not granted. (Motion, Doc. 2, Pg. ID 131.) When secured creditors "seek court intervention to maintain their position," courts have found "the prospective loss of their status quo security interest . . . sufficient to constitute the irreparable harm needed to justify an injunction." *Plainfield Specialty Holdings II Inc. v. Children's Legal Servs. PLLC*, 634 F. Supp. 2d 833, 846 (E.D. Mich. 2009) (collecting cases). Here, Plaintiff is a secured creditor, with all of Nestlings' assets serving as collateral. (Compl., Doc. 1, ¶¶ 79, 81.) Defendants nevertheless entered into an asset transfer agreement on September 19, 2024, to convey all of Nestlings' assets to Dew Ventures. (*Id.* at ¶¶ 51-53.)

Additionally, "the strong likelihood that a judgment-debtor would thwart collection efforts through the 'concealment and dissipation of assets' can establish irreparable harm." *United States v. Kelly*, No. 2:21-CV-12570, 2021 WL 12302024, at *5 (E.D. Mich. Nov. 3, 2021) (citing *McGirr v. Rehme*, 891 F.3d 603, 613-14 (6th Cir. 2018); *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 628 (6th Cir. 2013) (affirming an asset-freezing injunction because the defendant had "engaged in a number of . . . questionable financial transactions" suggesting a threat of asset dissipation)). As explained, the Defendants in this case, among other things, allegedly conspired to deprive Plaintiff of its rights as a preferred shareholder and secured creditor by improperly entering into the asset transfer agreement with Dew Ventures. (Compl., Doc. 1, ¶ 60, 109-110.)

Plaintiff is not only a secured creditor but also the sole Preferred Shareholder with unilateral control over decisions to dissolve, winddown, or indebt Nestlings in excess of

8

$100,000. (Compl., Doc. 1, ¶ 22.) Courts have found that "a bargained-for minority right to participate in corporate management has value in and of itself and a denial of that right, without more, can give rise to irreparable harm." *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 115 (2d Cir. 2003) (collecting cases). If all of Nestlings' assets—including intellectual property, software, and social media assets—are improperly transferred to Dew Ventures, this would likely harm Plaintiff specifically as a Preferred Shareholder.

Together, these considerations support a finding of irreparable harm to Plaintiff if the temporary restraining order is not granted. This factor therefore supports granting such relief.

### III. Substantial Harm to Others or the Public

The third and fourth factor also weigh in favor of a temporary restraining order. First, any harm that Defendants may allegedly suffer is due to Defendants' own alleged conduct. This Court has held that self-inflicted harm to a Defendant does not preclude injunctive relief. *Cooey v. Taft*, 430 F. Supp. 2d 702, 708 (S.D. Ohio 2006). Second, nothing in the record suggests that preventing Nestlings from transferring assets to Dew Ventures would cause substantial harms to any third parties. The public interest is generally served in the enforcement of "voluntarily assumed contract obligations." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*, 511 F.3d 535, 551 (6th Cir. 2007). Thus, substantial harm will not be caused to others and the public interest will be served by issuing a temporary restraining order.

### IV. Security

Plaintiff's Motion for Temporary Restraining Order seeks such relief without bond because there will be "no obvious harm to any of the Defendants at this early stage of the proceeding." (Doc. 2, Pg. ID 135.) At this time, the Court agrees and concludes that Plaintiff need not post bond. The Court shall revisit the issue of bond, if necessary, when adjudicating any motion for preliminary injunction that Plaintiff may file.

### CONCLUSION

Thus, the Court **GRANTS** Plaintiff's Motion for Temporary Restraining Order (Doc. 2) and **ORDERS** the following:

1. Nestlings is **ENJOINED** from (1) transferring any Nestlings assets to Dew Ventures or any third party; or (2) from taking any corporate action that would harm Candid Ventures' status as Nestlings' Preferred Shareholder, pending further approval by Candid Ventures or the Court.

2. This Order shall expire on the 14th day following the entry of this Order, subject to further orders of the Court.

**IT IS SO ORDERED.**

Date / Time: Sept. 30, 2024 at 12:06 p.m.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND

10