**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| CANDID VENTURES, LLC, | : | Case No. 1:24-cv-528 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| NESTLINGS, INC., et al., | : | |
| | : | |
| Defendants. | : | |

---

## ORDER AND OPINION

---

This matter is before the Court on Defendant Dew Ventures, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 12). Plaintiff filed a Response in Opposition (Doc. 22), and Defendant Dew Ventures filed a Reply in Support (Doc. 30). The Court held an evidentiary hearing on the motion on October 22, 2024. Thus, this matter is ripe for review. For the reasons below, Dew Ventures' Motion to Dismiss (Doc. 12) is **GRANTED**.

## BACKGROUND

Plaintiff Candid Ventures LLC is an Ohio limited liability company, a minority shareholder of Defendant Nestlings, Inc., and the exclusive shareholder of Nestlings' Series Seed Preferred Stock ("Preferred Stock"). (Am. Ver. Compl., Doc. 20, ¶¶ 3, 13.) A Nestlings subsidiary maintains a platform to support students seeking study-abroad opportunities. (Sowmya Satish Decl., Doc. 27-1, Pg. ID 474.) From this platform, Nestlings' subsidiary contracted with Visvesvaraya Technological University to provide

its platform to approximately 300,000 students ("Education Contract"). (*Id.* at Pg. ID 474.)

As Nestlings' exclusive Preferred Stock shareholder, Candid Ventures was entitled by Nestlings' Articles of Incorporation ("Articles") to elect a Preferred Director. (*Id.* at ¶¶ 13-17.) The Articles prohibited Nestlings from, among other things, dissolving the corporation, modifying the Preferred Stock, or selling any corporation assets below market value, unless approved by the Preferred Director. (*Id.* at ¶ 18.)

Candid Ventures and Nestlings also entered into a Series Seed Preferred Stock Purchase Agreement and an Investors' Rights Agreement. (Am. Ver. Compl., Doc. 20, ¶ 20). Under the Investors' Rights Agreement, Nestlings agreed to not incur debt greater than $100,000 and to not "sell, assign, license, or encumber material technology or intellectual property," without the Preferred Director's approval. (*Id.* at ¶ 21; Investors' Rights Agreement, Doc. 20-3, Pg. ID 332-33.)

Then, Defendants Rajashekar Basavaraju and Sowmya Satish, both Nestlings officers, requested additional funding from Candid Ventures. (Am. Ver. Compl., Doc. 20, ¶ 23.) Candid Ventures responded by loaning Nestlings $51,000 through the execution of two promissory notes ("Candid Ventures' Notes" or "Notes"), listing all of Nestlings' assets as collateral. (*Id.* at ¶¶ 81-84.) These promissory notes were filed and perfected with the California Secretary of State on August 13, 2024. (*Id.* at ¶ 24; UCC Search, Doc. 2, Pg. ID 141.) After executing the promissory notes, Basavaraju and Satish travelled to Cincinnati, Ohio, to meet with Candid Ventures' investors. (Am. Ver. Compl., Doc. 20, ¶ 26.) The investors provided Basavaraju and Satish with due diligence requests. (*Id.*) Basavaraju and Satish, however, ultimately failed to supply the investors with the due

diligence reports because the pair had failed to properly maintain corporate records. (*Id.* at ¶ 28.)

Based on Basavaraju and Satish's inability to provide corporate records, Candid Ventures demanded that Nestlings produce—among other things—"balance sheets, income statements, [and] cashflow statements." (Am. Ver. Compl., Doc. 20, ¶ 30.) In response, Nestlings produced a capitalization table reflecting a $334,000 debt to Defendant Dew Ventures, Inc., a California corporation with its principal place of business in California. (*Id.* at ¶ 32; Suresh Deopura Decl., Doc. 12-1, Pg. ID 178.) This debt, however, was incurred without the required approval of the Preferred Director. (*Id.* at ¶ 33.) Basavaraju and Satish then sought to ratify the unauthorized debt through the approval of Nestlings' board, but the Preferred Director voted against ratification. (*Id.* at ¶ 34.)

Basavaraju later produced four promissory notes dated between December 2022 and July 2024, which showed that Nestlings accepted the $334,000 from Dew Ventures and listed all of Nestlings' assets as collateral. (Am. Ver. Compl., Doc. 20, ¶ 35.) The "metadata," however, for each of Dew Ventures' Notes show that they were not created until the last weeks of July 2024. (*Id.* at ¶ 36.)

On August 3, 2024, Dew Ventures offered to loan $300,000 to Nestlings with a 15% interest rate, secured by all of Nestlings' assets on a "debt free basis." (Am. Ver. Compl., Doc. 20, ¶ 43.) The loan required all members to be a party to the agreement and that Nestlings procure a "waiver of rights" from each member, including Candid Ventures. (*Id.* at ¶ 43.) On August 9, 2024, Dew Ventures alternatively offered to purchase 50%

3

equity of Nestlings for $500,000, on the condition that Candid Ventures waive all rights as a shareholder, grant Dew Ventures unilateral decision-making authority, and grant Dew Ventures "the right to assume 100% of Nestlings on a 'debt-free basis' without consideration to Candid Ventures' equity holdings in Nestlings." (*Id.* at ¶ 44.) Candid Ventures rejected both of Dew Ventures' offers. (*Id.* at ¶ 45.) Shortly after, on August 13, 2024, Nestlings' Board voted to dissolve the corporation. (*Id.* at ¶ 46.) The Preferred Director agreed to this action on the condition that Nestlings gain Candid Ventures' approval, and that Nestlings provide a winddown proposal with a list of company assets, accounts, and an order of the distribution of assets. (*Id.*) Nestlings has not provided Candid Ventures with these materials. (*Id.* ¶ 47.)

On September 13, 2024, Dew Ventures sent a letter to Nestlings and the Preferred Director demanding payment of the $334,000 debt, or alternatively, that Nestlings transfer all of its assets to Dew Ventures. (Am. Ver. Compl., Doc. 20, ¶ 48.) That same day, Candid Ventures also demanded repayment of its Notes, which were perfected first in time through filings with the California Secretary of State. (*Id.* at ¶ 49; UCC Search, Doc 2, Pg. ID 141.) On September 18, 2024, Nestlings notified Candid Ventures that, over the Preferred Director's objection, it had rejected Candid Ventures' payment demand in favor of transferring all assets to Dew Ventures. (Am. Ver. Compl., Doc. 20, ¶ 51.) The following day, Candid Ventures wrote to Nestlings and Dew Ventures, notifying them that Candid Ventures' Notes have priority over Dew Ventures' Notes. (*Id.* at ¶ 52.) Despite this notice, Nestlings and Dew Ventures agreed to "convey all of Nestlings' company assets to Dew Ventures." (*Id.* ¶ 53.)

4

## PROCEDURAL POSTURE

On September 24, 2024, Plaintiff brought this action, seeking a temporary restraining order—as well as extended injunctive relief—preventing the transfer of Nestlings' assets to Dew Ventures and a declaratory judgment voiding Dew Ventures' Notes. (*See* Compl., Doc. 1.) Plaintiff also brought a breach of contract claim against Nestlings, a tortious interference of contract claim against Dew Ventures, breach of fiduciary duties and fraud claims against Basavaraju and Satish, a conspiracy claim against all Defendants, and a demand for accounting by Nestlings. (*Id.*) On September 27, 2024, Dew Ventures moved to dismiss claims against it for lack of personal jurisdiction. (Motion to Dismiss, Doc. 12.) On October 11, 2024, Plaintiff filed a verified amended complaint, adding a claim under the Ohio Uniform Fraudulent Transfer Act. (Am. Ver. Compl., Doc. 20.) The Court directed that briefing on the motion continue as to the Amended Verified Complaint and the parties only offered oral arguments and no testimonial evidence at the evidentiary hearing held on October 22, 2024. (10/15/2024 Notation Order; 10/24/2024 Minute Entry.)

## LAW & ANALYSIS

### I.    Personal Jurisdiction

A party can move to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quotation omitted). When a court decides the motion on written submissions, it "must consider the pleadings and affidavits in a light most favorable to

the nonmoving party." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (quotation omitted). In this context, a plaintiff must only make a prima facie showing for jurisdiction. *Kerry Steel. v. Paragon Indust.*, 106 F.3d 147, 149 (6th Cir. 1997). Alternatively, when a court conducts a pretrial evidentiary hearing, "the preponderance-of-the-evidence standard applies." *Schneider* 669 F.3d at 697. The Court held an evidentiary hearing on October 22, 2024, but the parties did not present additional evidence. (*See* 10/24/2024 Minute Entry.) Nevertheless, under either the prima facie standard—viewing Plaintiff's verified amended complaint and the affidavits in the light most favorable to Plaintiff—or the preponderance-of-the-evidence standard, the Court finds that it lacks personal jurisdiction over Dew Ventures.

Personal jurisdiction may be either general or specific. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). General jurisdiction "extends to any and all claims brought against a defendant who is essentially at home in the [s]tate." *Id.* In contrast, specific jurisdiction requires that the lawsuit "arise out of or relate to the defendant's contacts with the forum." *Id.* at 359. Since Plaintiff does not argue that the Court has general jurisdiction over Dew Ventures, the relevant analysis revolves around whether this Court may exercise specific jurisdiction over Dew Ventures. (Plaintiff's Response, Doc. 22, Pg. ID 355; *see also Kerry Steel,* 106 F.3d at 150)*.*

"When sitting in diversity, a federal court may exercise personal jurisdiction only if a court of the forum state could do so." *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021) (citation omitted). "Under Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2)

6

jurisdiction is proper under the Federal Due Process Clause." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012). Naturally, "if jurisdiction is not proper under the Due Process Clause[,] it is unnecessary to analyze jurisdiction under the state long-arm statute." *Id.* at 711-12; *see also Calphalon Corp. v. Rowlette*, 228 F.3d 718, 724 (6th Cir.2000). The Court will first consider whether jurisdiction is proper under the Due Process Clause.

### a. Due Process

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). The nonresident "generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quotations omitted). Courts look to whether: (1) the defendant purposefully availed himself of the privilege of acting in the forum state; (2) the claim arose from the defendant's activities there; and (3) the defendant's actions had a substantial enough connection to the forum state to make exercising jurisdiction reasonable. *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 670 (6th Cir. 2023). Each of these factors "represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." *Lak, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989).

### i. Purposeful Availment

"The purposeful availment requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State, and when the defendant's conduct and

connection with the forum are such that he should reasonably anticipate being haled into court there." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quotations omitted). This ensures that a defendant will not be subject to personal jurisdiction "solely as a result of random, fortuitous or attenuated contacts or of the unilateral activity of another party or third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted). A defendant need not have physical contacts with the forum state, however, as long as his efforts were purposefully directed towards the forum state. *Id.* at 476. "It is the quality of [the] contacts, and not their number or status, that determines whether they amount to purposeful availment." *CompuServe*, 89 F.3d at 1265 (quotation omitted).

Since Plaintiff argues that this Court should employ the "effects test" of *Calder v. Jones*, a brief review of *Calder* and its progeny is in order. (Plaintiff's Response, Doc. 22, Pg. ID 358.) In *Calder*, the Supreme Court held that two Florida writers were subject to personal jurisdiction in California after the "brunt of the harm" of their allegedly libelous article was suffered in California. *Calder v. Jones*, 465 U.S. 783, 788-89 (1984). Although the article was not written in California, jurisdiction was still proper because of the defendants' ample contacts with California and the "effects" that the out-of-state conduct had in California. *Id.* at 789. Put differently, jurisdiction was appropriate because "California [wa]s the focal point both of the story and of the harm suffered." *Id.*

The Sixth Circuit subsequently narrowed the application of *Calder*'s "effects test," such that "the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." *Air Prods. &*

8

*Controls, Inc. v. Safetech Int'l Inc.*, 503 F.3d 544, 552 (6th Cir. 2007). Nevertheless, intentional tortious conduct may "enhance" a party's other contacts with the forum state. *Id.* at 553 (citation omitted).

More recently, the Supreme Court has expounded on *Calder*: "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). In other words, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* Applying these principles in *Walden*, the Supreme Court held that Nevada could not exercise jurisdiction over a defendant from Georgia merely because defendant knew that his false affidavit would cause the plaintiffs harm in Nevada. *Id.* at 279-80. Though the plaintiff may have had "strong forum connections" with Nevada, the defendant had "formed no jurisdictionally relevant contacts with Nevada" as he "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 289. Thus, the defendant's "actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.*

Consequently, in the post-*Walden* landscape, "it appears that a bare allegation that a defendant caused an effect in the forum state, standing alone, does not suffice to confer specific personal jurisdiction." *Mesa Indus., Inc. v. Charter Indus. Supply, Inc.*, No. 1:22-CV-160, 2022 U.S. Dist. LEXIS 138577, at *27 (S.D. Ohio Aug. 3, 2022). While the Sixth Circuit has not precisely outlined *Walden*'s effect on *Calder*, it has clarified that: "plaintiffs must

do more than claim that [the defendant's] actions affected them in [the forum state] and must show that [the defendant] had some level of contact with the state." *Id.* (quoting *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 901 (6th Cir. 2017)).

With these principles in mind, the Court returns to the case at hand. Plaintiff primarily contends that Dew Ventures purposefully availed itself to suit in Ohio by (1) tortiously interfering with the Investors' Rights Agreement, the Series Seed Preferred Stock Purchase Agreement, and Candid Ventures' Notes and (2) conspiring with Nestlings to force Candid Ventures out of Nestlings and to transfer all assets to Dew Ventures. (Plaintiff's Response, Doc. 22, Pg. ID 351; Am. Ver. Compl., Doc. 20, ¶¶ 11, 41-44.) Additionally, Plaintiff points to Dew Ventures knowing that Candid Ventures was an Ohio entity and intending that their conduct would cause harm in Ohio. (Am. Ver. Compl., Doc. 20, ¶ 11.)

Plaintiff, however, fails to demonstrate that Dew Ventures has sufficient contacts with Ohio to conclude that it purposefully availed itself to suit. Dew Ventures is a California corporation whose principal place of business is also in California. (Am. Ver. Compl., Doc. 20, ¶ 7.) Dew Ventures has never conducted business in, held an office in, traveled to, or solicited any business from Ohio. (Suresh Deopura Decl., Doc. 12-1, Pg. ID 178.) There is no privity of contract between Plaintiff and Dew Ventures, as Dew Ventures was not a party to the Series Seed Preferred Stock Purchase Agreement, the Investor's Rights Agreement, or Candid Ventures' Notes. (*Id.* at Pg. ID 179.) These considerations are noteworthy because "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden*, 571 U.S. at 285, 291 (explaining that the

"'minimum 'contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there").

To be sure, Dew Ventures sent a letter to Nestlings and its Preferred Director, demanding repayment of its debt or, alternatively, the transfer of all corporate assets to Dew Ventures. (Am. Ver. Compl., Doc. 20, ¶¶ 17, 48.) Although "[a] single contact may meet the purposeful availment requirement," the defendant must still engage in sufficient activity to allow him a "'fair warning' that he may have to defend a lawsuit there." *Youn v. Track, Inc.*, 324 F.3d 409, 419-20 (6th Cir. 2003). Personal jurisdiction may be proper, for instance, when defendants extensively and directly communicate to plaintiffs and already have an existing business relationship. *See Blessing v. Chandrasekhar*, 988 F.3d 889, 905 (6th Cir. 2021) (collecting cases). Therefore, even if Dew Ventures' letter was presumably sent into Ohio (*see* Am. Ver. Compl., Doc. 20, ¶¶ 3, 17), the attenuated nature of this single contact concerning a California corporation's repayment of debt is insufficient to provide Dew Ventures with a fair warning to defend a suit in this Court. *See, e.g., Rice v. Karsch*, 154 F. App'x 454, 462-63 (6th Cir. 2005); *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000). At the evidentiary hearing, Plaintiff did not elaborate on this potential contact or produce any evidence suggesting other contacts Dew Ventures had with Ohio.

Plaintiff's argument that Dew Ventures purposefully availed itself under the *Calder* "effects test" does not alter this conclusion. Although the brunt of the harm of Dew Ventures' allegedly tortious conduct may have been felt by Plaintiff, who happens to be located in Ohio, this only enhances existing contacts. After all, "[i]t is rare that an out-of-

11

state defendant's communications with an in-state [party] regarding an isolated out-of-

state transaction will give rise to personal jurisdiction." *Hartman v. Lowry*, No. 4:20-CV-

2752, 2021 U.S. Dist. LEXIS 67877, at *12 (N.D. Ohio Mar. 26, 2021). Thus, Plaintiff has not

shown that Dew Ventures purposefully availed itself to suit in Ohio. *See, e.g., Hartman*,

2021 U.S. Dist. LEXIS 67877 at *12 (finding no purposeful availment when the defendant

only contacted the plaintiff concerning a single transaction and did not intend to establish

a continuing relationship with Ohio); *QFS Transp., LLC v. Murphy*, No. 1:21-CV-00770,

2022 U.S. Dist. LEXIS 237514, at *15-19 (S.D. Ohio May 27, 2022) (finding no purposeful

availment because defendant lacked sufficient contacts with Ohio, despite argument that

defendant knowingly caused harm to a plaintiff in Ohio); *Campinha-Bacote v. Wick*, No.

1:15-CV-277, 2015 U.S. Dist. LEXIS 157372, at *11-13 (S.D. Ohio Nov. 20, 2015) (similar).

As Plaintiff has failed to establish that Dew Ventures purposefully availed itself to

suit in Ohio, the Court need not analyze the other prongs of the due process analysis. *See*

*Deer Creek Enters.*, 885 F.2d at 1303. Exercising personal jurisdiction over Dew Ventures

would not comport with due process, so the Court dismisses all claims against Dew

Ventures without prejudice.

## II.    Jurisdictional Discovery

Plaintiff further argues that the Court should allow limited jurisdictional

discovery in the event that it would be inclined to find a lack of personal jurisdiction.

(Plaintiff's Response, Doc. 22, Pg. ID 361.) Because a district court has discretion to grant

or deny jurisdictional discovery, a party does not have an unqualified right to such

discovery. *Angel's Dream, LLC v. Toledo Jet Ctr., LLC*, 684 F. Supp. 3d 663, 670 (N.D. Ohio

2023). In requesting jurisdictional discovery, plaintiffs "must do more than 'merely assert' the need for discovery; they must 'explain what evidence relevant to subject matter jurisdiction they [would be] denied from obtaining.'" *C.H. By & Through Shields v. United States*, 818 F. App'x 481, 484 (6th Cir. 2020) (quotation omitted).

Here, Plaintiff asserts that jurisdictional discovery is warranted to determine "[t]he full extent of Dew Ventures' concerted efforts to cause harm to Candid Ventures, including its discussions with other Defendants as to their motive and intent to cause harm." (Plainitff's Response, Doc. 22, Pg. ID 361.) The Court does not find such jurisdictional discovery necessary. Plaintiff has not specified the particular evidence that may be revealed to change the jurisdictional analysis set forth above. Moreover, the parties had an opportunity to present evidence and call witnesses at the evidentiary hearing. *See Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (explaining that courts may decide a jurisdictional matter by permitting discovery or conducting an evidentiary hearing). The Court therefore denies Plaintiff's request for jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, Defendant Dew Ventures' Motion to Dismiss (Doc. 12) is **GRANTED**. Plaintiff's claims against Defendant Dew Ventures are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND