IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| CANDID VENTURES, LLC, | : | Case No. 1:24-cv-528 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| NESTLINGS, INC., et al., | : | |
| Defendants. | : | |

## ORDER AND OPINION

This matter is before the Court on Plaintiff Candid Ventures LLC's Motion for Preliminary Injunction (Doc. 15). Defendants Dew Ventures, Inc., and Nestlings, Inc., have both filed responses in opposition to Plaintiff's motion. (Docs. 25, 26.) Plaintiff then filed a consolidated reply in support of its motion. (Doc. 32.) The Court held an evidentiary hearing on October 22, 2024. The parties then filed supplemental briefing. (Docs. 36, 39, 40). Thus, this matter is ripe for review. For the following reasons, Plaintiff's Motion for Preliminary Injunction (Doc. 15) is **DENIED**.

## BACKGROUND

Plaintiff Candid Ventures LLC is an Ohio limited liability company, a minority shareholder of Defendant Nestlings, Inc., and the exclusive shareholder of Nestlings' Series Seed Preferred Stock ("Preferred Stock"). (Am. Ver. Compl., Doc. 20, ¶¶ 3, 13.) A Nestlings subsidiary maintains a platform to support students seeking study-abroad opportunities. (Sowmya Satish Decl., Doc. 27-1, Pg. ID 474.) From this platform,

Nestlings' subsidiary contracted with Visvesvaraya Technological University to provide its platform to approximately 300,000 students ("Education Contract"). (*Id.* at Pg. ID 474.)

As Nestlings' exclusive Preferred Stock shareholder, Candid Ventures was entitled by Nestlings' Articles of Incorporation ("Articles") to elect a Preferred Director. (*Id.* at ¶¶ 13-17.) The Articles prohibited Nestlings from, among other things, dissolving the corporation, modifying the Preferred Stock, or selling any corporation assets below market value, unless approved by the Preferred Director. (*Id.* at ¶ 18.)

Candid Ventures and Nestlings also entered into a Series Seed Preferred Stock Purchase Agreement and an Investors' Rights Agreement. (Am. Ver. Compl., Doc. 20, ¶ 20). Under the Investors' Rights Agreement, Nestlings agreed to not incur debt greater than $100,000 and to not "sell, assign, license, or encumber material technology or intellectual property," without the Preferred Director's approval. (*Id.* at ¶ 21; Investors' Rights Agreement, Doc. 20-3, Pg. ID 332-33.)

Then, Defendants Rajashekar Basavaraju and Sowmya Satish, both Nestlings officers, requested additional funding from Candid Ventures. (Am. Ver. Compl., Doc. 20, ¶ 23.) Candid Ventures responded by loaning Nestlings $51,000 through the execution of two promissory notes ("Candid Ventures' Notes" or "Notes"), listing all of Nestlings' assets as collateral. (*Id.* at ¶¶ 81-84.) These promissory notes were filed and perfected with the California Secretary of State on August 13, 2024. (*Id.* at ¶ 24; UCC Search, Doc. 2, Pg. ID 141.) After executing the promissory notes, Basavaraju and Satish travelled to Cincinnati, Ohio, to meet with Candid Ventures' investors. (Am. Ver. Compl., Doc. 20, ¶ 26.) The investors provided Basavaraju and Satish with due diligence requests. (*Id.*)

2

Basavaraju and Satish, however, ultimately failed to supply the investors with the due diligence reports because the pair had failed to properly maintain corporate records. (*Id.* at ¶ 28.)

Based on Basavaraju and Satish's inability to provide corporate records, Candid Ventures demanded that Nestlings produce—among other things—"balance sheets, income statements, [and] cashflow statements." (Am. Ver. Compl., Doc. 20, ¶ 30.) In response, Nestlings produced a capitalization table reflecting a $334,000 debt to Defendant Dew Ventures, Inc., a California corporation with its principal place of business in California. (*Id.* at ¶ 32; Suresh Deopura Decl., Doc. 12-1, Pg. ID 178.) This debt, however, was incurred without the required approval of the Preferred Director. (*Id.* at ¶ 33.) Basavaraju and Satish then sought to ratify the unauthorized debt through the approval of Nestlings' board, but the Preferred Director voted against ratification. (*Id.* at ¶ 34.)

Basavaraju later produced four promissory notes dated between December 2022 and July 2024, which showed that Nestlings accepted the $334,000 from Dew Ventures and listed all of Nestlings' assets as collateral. (Am. Ver. Compl., Doc. 20, ¶ 35.) The "metadata," however, for each of Dew Ventures' Notes show that they were not created until the last weeks of July 2024. (*Id.* at ¶ 36.)

On August 3, 2024, Dew Ventures offered to loan $300,000 to Nestlings with a 15% interest rate, secured by all of Nestlings' assets on a "debt free basis." (Am. Ver. Compl., Doc. 20, ¶ 43.) The loan required all members to be a party to the agreement and that Nestlings procure a "waiver of rights" from each member, including Candid Ventures.

3

(*Id.* at ¶ 43.) On August 9, 2024, Dew Ventures alternatively offered to purchase 50% equity of Nestlings for $500,000, on the condition that Candid Ventures waive all rights as a shareholder, grant Dew Ventures unilateral decision-making authority, and grant Dew Ventures "the right to assume 100% of Nestlings on a 'debt-free basis' without consideration to Candid Ventures' equity holdings in Nestlings." (*Id.* at ¶ 44.) Candid Ventures rejected both of Dew Ventures' offers. (*Id.* at ¶ 45.) Shortly after, on August 13, 2024, Nestlings' Board voted to dissolve the corporation. (*Id.* at ¶ 46.) The Preferred Director agreed to this action on the condition that Nestlings gain Candid Ventures' approval, and that Nestlings provide a winddown proposal with a list of company assets, accounts, and an order of the distribution of assets. (*Id.*) Nestlings has not provided Candid Ventures with these materials. (*Id.* ¶ 47.)

On September 13, 2024, Dew Ventures sent a letter to Nestlings and the Preferred Director demanding payment of the $334,000 debt, or alternatively, that Nestlings transfer all of its assets to Dew Ventures. (Am. Ver. Compl., Doc. 20, ¶ 48.) That same day, Candid Ventures also demanded repayment of its Notes, which were perfected first in time through filings with the California Secretary of State. (*Id.* at ¶ 49; UCC Search, Doc 2, Pg. ID 141.) On September 18, 2024, Nestlings notified Candid Ventures that, over the Preferred Director's objection, it had rejected Candid Ventures' payment demand in favor of transferring all assets to Dew Ventures. (Am. Ver. Compl., Doc. 20, ¶ 51.) The following day, Candid Ventures wrote to Nestlings and Dew Ventures, notifying them that Candid Ventures' Notes have priority over Dew Ventures' Notes. (*Id.* at ¶ 52.) Despite this notice, Nestlings and Dew Ventures agreed to "convey all of Nestlings'

4

company assets to Dew Ventures." (*Id.* ¶ 53.)

## PROCEDURAL POSTURE

On September 24, 2024, Plaintiff brought this action, seeking a temporary restraining order—as well as extended injunctive relief—preventing the transfer of Nestlings' assets to Dew Ventures and a declaratory judgment voiding Dew Ventures' Notes. (*See* Compl., Doc. 1.) Plaintiff also brought a breach of contract claim against Nestlings, a tortious interference of contract claim against Dew Ventures, breach of fiduciary duties and fraud claims against Basavaraju and Satish, conspiracy claims against all Defendants, and a demand for accounting by Nestlings. (*Id.*)

This Court granted a temporary restraining order on September 30, 2024, enjoining Nestlings from transferring any assets to Dew Ventures or a third party, and preventing Nestlings from taking any corporate action to harm Candid Ventures as a shareholder. (Order Granting Temporary Restraining Order, Doc. 14.) On October 3, 2024, Plaintiff moved for a preliminary injunction. (Motion for Preliminary Injunction, Doc. 15.) Then, on October 15, 2024, Plaintiff filed an amended verified complaint, adding a claim under the Ohio Uniform Fraudulent Transfer Act. (Am. Ver. Compl., Doc. 20.) The Court held an evidentiary hearing on October 22, 2024, where the parties only offered oral arguments and no testimonial evidence. (10/15/2024 Notation Order; 10/24/2024 Minute Entry.) Dew Ventures filed a Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 12), which this Court has granted by separate order. Accordingly, the following adjudication of Plaintiff's Motion for Preliminary Injunction only concerns Nestlings.

5

## LAW & ANALYSIS

### I. Preliminary Injunction

Federal Rule of Civil Procedure 65(a) allows the Court to issue a preliminary injunction against an adverse party. Fed. R. Civ. P. 65(a). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "A party thus is not required to prove his case in full at a preliminary-injunction hearing." *Id.* (citation omitted). This does not mean, though, "that preliminary injunctions should be granted lightly." *Southern Glazer's Distribs. of Ohio, LCC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017).

In determining whether to impose a preliminary injunction, this Court must consider four factors: "(1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without a preliminary injunction; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). These four factors are "to be balanced and not prerequisites that must be satisfied." *Id.* "The party seeking the preliminary injunction bears the burden of justifying such relief," and it should "only be awarded upon a clear showing that the [party] is entitled to such relief." *Id; Winter*, 555 U.S. at 22.

#### a. Likelihood of Success on the Merits

The first prong of the analysis requires Plaintiff to show a likelihood of success on

the merits. *McNeilly*, 684 F.3d at 615. Plaintiff, however, must only show a likelihood of success on one claim. *McQueary v.Conway*, 614 F.3d 591, 603 (6th Cir. 2010). The Court analyzes the likelihood of Plaintiff's success on its breach of contract claim against Nestlings.

Relevant to its breach of contract claim, Plaintiff alleges that Nestlings entered two Notes with Plaintiff, in which Plaintiff loaned Nestlings a total of $51,000. (Am. Ver. Compl., Doc. 20, ¶¶ 81-83.) Both Notes were secured by "all assets of [Nestlings], including but not limited to hardware, software, intellectual property, customer contracts, cash or cash equivalents, bank accounts, or any other intangible property" owned by Nestlings. (*Id.* at ¶¶ 82, 84.) Plaintiff's Notes matured on June 1, 2024, and September 13, 2024, respectively. (*Id.* at ¶¶ 81, 83; Docs. 20-4, 20-5.) Although Plaintiff made a written request for repayment of Candid Ventures' Notes on September 13, 2024, Nestlings has yet to repay Plaintiff. (*Id.* at ¶¶ 82-87.)

Both Plaintiff's Notes have a choice of law provision dictating that Ohio law will govern any disputes. (Notes, Docs. 20-4, 20-5, Pg. ID 345-46). Accordingly, this Court analyzes the likelihood of success on the merits under Ohio contract law. *See Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) ("When interpreting contracts in a diversity action, we also generally enforce the parties' contractual choice of governing law."); *Nat'l Fin. Partners Corp. v. Heffern*, No. 1:14-CV-1297, 2015 U.S. Dist. LEXIS 60588 at *7 (N.D. Ohio May 8, 2015) ("Ohio considers promissory notes to be contracts as a matter of law"). Ohio law recognizes four essential elements of a breach of contract claim: "(1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the

7

defendant; and (4) damage or loss to the plaintiff as a result of the breach." *Asset Mgmt. One LLC v. U.S. Bank N.A.*, 569 F. App'x 438, 441 (6th Cir. 2014).

Considering the evidence present before this Court, Plaintiff has a high likelihood of success on its breach of contract claim against Nestlings. Plaintiff and Nestlings executed two Notes that detail the terms of the contracts. (Notes, Docs. 20-4, 20-5.) By evidence of the Notes themselves, Plaintiff has satisfied the first element of breach. Plaintiff also paid the amounts promised in the Notes to Nestlings. (Am. Ver. Compl. Doc. 20, ¶¶ 81, 83). In doing so, Plaintiff has performed its contractual obligations, satisfying the second element. Plaintiff requested repayment on the date agreed upon in the Notes. (Am. Ver. Compl., Doc. 20, ¶ 85.) Yet, Nestlings has refused to repay Plaintiff, constituting a breach of contract. (*Id.* ¶ 86.) Finally, because of its breach, Nestlings has deprived Plaintiff of money that Plaintiff is rightfully owed, resulting in damages. (*Id.* ¶ 91.)

Nestlings defends its alleged actions by arguing that Plaintiff materially breached the contract, thereby excusing Nestlings' performance. (Nestlings' Response, Doc. 26, Pg. ID 404.) Under Ohio law, when a party breaches a material element of the contract, the opposing party is excused from performance. *Jackson v. State Farm Fire & Cas. Co.*, 461 F. App'x 422, 426 (6th Cir. 2012). A breach is material when a party fails to do something "so fundamental to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform." *Stanley v. Historic Newark Basket, LLC*, No. 2:22-CV-1783, 2023 U.S. Dist. LEXIS 218901, at *19 (N.D. Ohio Dec. 8, 2023) (quotation omitted).

Nestlings states that Plaintiff breached the implied covenant of fair dealing by exercising its ability to block Nestlings from incurring $100,000 or more in debt. (Nestlings' Response, Doc. 26, Pg. ID 405.) According to Nestlings, by exercising this right, Plaintiff committed a material breach. *Id.* Ohio law, however, "only recognizes an implied covenant of good faith and fair dealing in insurance contracts and in limited circumstances where the duty arises from the language of the contract." *Capital Equity Grp. v. Ripken Sports Inc.*, 744 F. App'x 260, 264 (6th Cir. 2018) (quoting *Pappas v. Ippolito*, 895 N.E.2d 610, 622 (Ohio Ct. App. 2008)). Here, the Notes are not insurance contracts and do not include language to suggest the existence of an implied covenant of good faith or fair dealing. (*See* Notes, Docs. 20-4, 20-5.) Therefore, Plaintiff could not have breached either covenant by exercising its blocking rights because Plaintiff's Notes contained no implied covenant of good faith or fair dealing. Thus, Plaintiff has established, for the purposes of a preliminary injunction, a strong likelihood of success on the merits of its breach of contract claim.

### b. Irreparable Harm

The next prong of the analysis looks to whether the plaintiff will suffer irreparable harm. The Court must weigh the strength of the other factors together, but "even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Summer Cty. Sch.*, 942 F.3d 324, 326-37 (6th Cir. 2019); *Cretor Constr. Equip. LLC v. Gibson*, No. 1:24-CV-322, 2024 U.S. Dist. LEXIS 115526, *13 (S.D. Ohio July 1, 2024) ("[F]ailure to show an irreparable injury is always fatal.") For the plaintiff to satisfy this burden, "the harm alleged must be both certain and immediate, rather than

9

speculative or theoretical." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). Additionally, a harm must not be "fully compensable by monetary damages." *Overstreet v. Lexington–Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).

While the Court initially determined that Plaintiff faced irreparable harm in its order granting a temporary restraining order, the record presently before the Court does not dictate the same outcome for a preliminary injunction. Here, Plaintiff is a secured creditor, with all of Nestlings' assets serving as collateral. (Am. Ver. Compl., Doc. 20, ¶¶ 82, 84.) Defendants entered into an asset transfer agreement on September 19, 2024, to convey all of Nestlings' assets to Dew Ventures, including intellectual property, contracts, subsidiaries, digital assets, and financial assets. (*Id.* at ¶¶ 53-54; Asset Transfer Agreement, Doc. 27-25, Pg. ID 713).

Because of this transfer, Nestlings has represented that it no longer controls or possesses any of the assets in which Plaintiff claims an interest. (Nestlings' Supplemental Briefing, Doc. 36, Pg. ID 848.) If Nestlings no longer retains any assets, a preliminary injunction freezing Nestlings' assets would not protect the subject matter of this litigation. Rather, it would be placing a purposeless restraint on Nestlings. Although the opportunity of a debtor to thwart collection efforts by dissipating assets may cause irreparable harm, *see, e.g., Leaf Funding, Inc. v. Butera*, No. 3:06-CV-938, 2006 U.S. Dist. LEXIS 72887 at *3 (M.D. Tenn. Oct. 5, 2006), the debtor must still have assets to dissipate. Here, Plaintiff has failed to provide evidence to suggest that Nestlings still retains anything of value. In fact, the only remaining assets controlled by Nestlings are five

accounts displaying a debt of approximately $76,782.10. (Nestlings' Supplemental Briefing, Doc. 36, Pg. ID 849.) This Court declines to grant the extraordinary relief of an injunction to freeze Nestlings' assets when Plaintiff has not put forth any evidence of Nestlings' current control or possession of such assets. *See Griepentrog*, 945 F.2d at 154. Nor has this Court found any other relevant judicial decision granting such requested relief in a similar situation.

Furthermore, Plaintiff's status as a preferred shareholder of Nestlings does not show irreparable harm under these circumstances. Courts have found that "a bargained-for minority right to participate in corporate management has value in and of itself and a denial of that right, without more, can give rise to irreparable harm." *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 115 (2d Cir. 2003) (collecting cases). For cases involving the loss of corporate control, however, the irreparable harm inquiry is "highly fact specific." *Bextak Co. v. Bank One Columbus, N.A.*, 811 F. Supp. 274, 284 (E.D. Mich. 1992). Here, Plaintiff is the sole Preferred Shareholder with unilateral control over decisions to dissolve, winddown, or indebt Nestlings in excess of $100,000. (Am. Ver. Compl., Doc. 20, ¶ 22.) At this juncture, however, Plaintiff has failed to produce evidence to show how these rights would be irreparably harmed without the continued freezing of Nestlings' assets, even when presented with an opportunity to do so at an evidentiary hearing. Since Nestlings no longer controls any assets, there is no longer any corporate value for Plaintiff to control. Thus, the irreparable harm prong strongly weighs against granting a preliminary injunction.

### c. Substantial Harm to Others

The third factor asks, "whether issuance of a preliminary injunction would cause substantial harm to others." *McNeilly*, 684 F.3d at 615. Nestlings argues that a preliminary injunction would cause harm to the Education Contract, preventing numerous students from navigating the foreign exchange application process. (Nestlings' Response, Doc. 26, Pg. ID 407.) In addition to harming the students, Nestlings asserts that the universities connected to its platform would also be harmed, as they would no longer receive the international students' tuition. *Id.* Although the Court acknowledges the potential inconvenience felt by students who initially used Nestlings' platform, Nestlings is not the sole supplier of study-abroad software. Any student unable to utilize Nestlings' platform could use the services offered by a competitor. Therefore, because the harm to others would not be substantial, this factor weighs slightly in favor of Plaintiff.

### d. The Public Interest

The last factor that the Court considers is whether "the public's interest will be served if the court grants a preliminary injunction." *McNeilly*, 684 F.3d at 615. When examining a breach of contract claim within the preliminary injunction context, the public interest is generally served in the enforcement of "voluntarily assumed contract obligations." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*, 511 F.3d 535, 551 (6th Cir. 2007). Here, Nestlings voluntarily executed two promissory notes, in which Plaintiff agreed to loan Nestlings a total of $51,000. (Am. Ver. Compl. Doc. 20, ¶ 24.) Since promissory notes are considered contracts under Ohio law, the public's interest will be served by enforcing the Notes. *Nat'l Fin. Partners Corp.*, 2015 U.S. Dist. LEXIS 60588 at *7.

Furthermore, it is against public policy to permit parties to dissipate assets through allegedly fraudulent conveyances. *See Jieyi Elecs. Co. v. Case Indus.*, No. 5:14-CV-1996, 2015 U.S. Dist. LEXIS 62173, at *10 (N.D. Ohio May 12, 2015). Since Plaintiff brings this motion to prevent Nestlings from further dissipating any remaining assets, this prong weighs in favor of granting the preliminary injunction.

## CONCLUSION

Although Plaintiff may have a strong likelihood of success on the merits, and there may be little substantial harm to others or the public, "even the strongest showing on [these] factors cannot 'eliminate the irreparable harm requirement.'" *D.T.*, 942 F.3d 324, at 326-37. Since Plaintiff failed to provide any evidence that Nestlings still maintains any assets that the Court may freeze, the irreparable harm requirement has not been met.

For these reasons, Plaintiff's Motion for Preliminary Injunction (Doc. 15) is **DENIED.**

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND