IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| CANDID VENTURES, LLC, | : | Case No. 1:24-cv-528 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| NESTLINGS, INC., et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER AND OPINION

This matter is before the Court on Rajashekar Basavaraju and Sowmya Satish's Motion for Judgment on the Pleadings (Doc. 34), Candid Ventures LLC's Motion to Dismiss (Doc. 46), Candid Ventures LLC's Motion for Reconsideration (Doc. 49), Nestlings, Inc.'s Notice of Bankruptcy Stay (Docs. 58, 59), Basavaraju and Satish's Motion to Stay Discovery (Docs. 60, 62), and Attorneys Jed Chedid and Charles Wolofsky's Motion to Withdraw (Doc. 70). These matters have all been fully briefed or the time to file a brief has passed. Thus, these matters are ripe for the Court's review.

For the reasons below, Basavaraju and Satish's Motion for Judgment on the Pleadings (Doc. 34) is **DENIED WITHOUT PREJUDICE**; Candid Ventures LLC's Motion to Dismiss (Doc. 46) is **GRANTED IN PART AND DENIED IN PART**; Candid Ventures LLC's Motion for Reconsideration (Doc. 49) is **DENIED**; Basavaraju and Satish's Motion to Stay Discovery (Docs. 60, 62) is **DENIED AS MOOT**: and Attorneys Chedid and Wolofsky's Motion to Withdraw (Doc. 70) is **GRANTED**.

**BACKGROUND**

Rajashekar Basavaraju and Sowmya Satish together developed Nestlings, Inc., a California corporation providing an education platform to help students participate in foreign exchange programs. (Counterclaim, Doc. 27, ¶ 6; Satish Decl., Doc. 27-1, Pg. ID 474.) As Nestlings grew, Basavaraju and Satish sought additional funding from Anushree Vora, chief operating officer of AdmitAlly, LLC, a subsidiary of Candid Ventures LLC. (Counterclaim, Doc. 27, ¶ 8.) Vora ultimately decided to invest in Nestlings through Candid Ventures. (*Id.* at ¶¶ 4, 8.) This transaction was executed through the Series Seed Preferred Stock Purchase Agreement ("Preferred Stock Purchase Agreement") and the Investors' Rights Agreement ("IRA") to have the following effect: (1) Candid Ventures became a minority shareholder of Nestlings and the exclusive shareholder of Nestlings' Series Seed Preferred Stock ("Preferred Stock"); and (2) Candid Ventures transferred ownership of AdmitAlly to Nestlings. (Am. Ver. Compl., Doc. 20, ¶¶ 13, 20; Preferred Stock Purchase Agreement, Doc. 46-1, Pg. ID 918.)

As the exclusive Preferred Stock shareholder, Candid Ventures was entitled by Nestlings' Articles of Incorporation ("Articles") to elect Vora as the Preferred Director. (Am. Ver. Compl., Doc. 20, ¶¶ 13-17.) The Articles also prohibited Nestlings from dissolving the corporation, modifying the Preferred Stock, or selling any corporation assets below market value, unless approved by the Preferred Director. (*Id.* at ¶ 18.) Under the IRA, Nestlings agreed to not incur debt greater than $100,000 and to not "sell, assign, license, or encumber material technology or intellectual property," without the Preferred Director's approval. (*Id.* at ¶ 21; IRA, Doc. 20-3, Pg. ID 332-33.)

2

In June 2022, Nestlings contracted with Vishweshwaraiah Technological University to be the exclusive facilitator of its study abroad programs. (Counterclaim, Doc. 27, ¶ 10.) Basavaraju and Satish then requested additional funding from Candid Ventures to service the contract. (Am. Ver. Compl., Doc. 20, ¶ 23; *see also* Counterclaim, Doc. 27, ¶ 12.) Candid Ventures responded by loaning Nestlings $51,000 through the execution of two promissory notes ("Candid Ventures' Notes" or "Notes"), listing all of Nestlings' assets as collateral. (Am. Ver. Compl., Doc. 20, ¶¶ 81-84.) These promissory notes were later filed and perfected with the California Secretary of State on August 13, 2024. (*Id.* at ¶ 24; UCC Search, Doc. 2, Pg. ID 141.) After executing the promissory notes, Basavaraju and Satish travelled to Cincinnati, Ohio, to meet with Candid Ventures' investors. (Am. Ver. Compl., Doc. 20, ¶ 26.) The investors provided Basavaraju and Satish with due diligence requests. (*Id.*) Basavaraju and Satish, however, ultimately failed to supply the investors with the due diligence reports because the pair had failed to properly maintain corporate records. (*Id.* at ¶ 28.)

Based on Basavaraju and Satish's inability to provide corporate records, Candid Ventures demanded that Nestlings produce—among other things—"balance sheets, income statements, [and] cashflow statements." (Am. Ver. Compl., Doc. 20, ¶ 30.) In response, Nestlings produced a capitalization table reflecting a $334,000 debt to Dew Ventures, Inc. (*Id.* at ¶ 32; Deopura Decl., Doc. 12-1, Pg. ID 178.) Candid Ventures maintains that this debt was incurred without the required approval of the Preferred Director. (Am. Ver. Compl., Doc. 20, ¶ 33.) Nestlings, Basavaraju, and Satish alternatively allege that Vora was aware of the debt but "dishonestly claim[s] ignorance."

(Counterclaim, Doc. 27, ¶ 18.) Basavaraju and Satish sought to ratify the potentially unauthorized debt through the approval of Nestlings' board, but Vora voted against ratification. (*Id*. at ¶ 34.)

Basavaraju later produced four promissory notes dated between December 2022 and July 2024, which showed that Nestlings accepted the $334,000 from Dew Ventures and listed all of Nestlings' assets as collateral. (Am. Ver. Compl., Doc. 20, ¶ 35.) The "metadata," however, for each of Dew Ventures' Notes show that they were not created until the last weeks of July 2024. (*Id*. at ¶ 36.)

On July 26, 2024, Vora offered to loan Nestlings $300,000. (Counterclaim, Doc. 27, ¶ 22.) This loan, however, was offered with two conditions: it needed to be fully repaid within six months and, in the event of Nestlings' default, Vora would be able to purchase the company for one dollar. (*Id*.) Nestlings declined Vora's offer. (*Id*.) On August 3, 2024, Candid Ventures maintains that Dew Ventures offered an alternative loan to Nestlings of $300,000 with a 15% interest rate, secured by all of Nestlings' assets on a "debt free basis." (Am. Ver. Compl., Doc. 20, ¶ 43.) The loan required that all members be a party to the agreement and that Nestlings procure a "waiver of rights" from each member, including Candid Ventures. (*Id*. at ¶ 43.) Dew Ventures then offered to purchase 50% equity of Nestlings for $500,000, on the condition that Candid Ventures waive all rights as a shareholder, grant Dew Ventures unilateral decision-making authority, and grant Dew Ventures "the right to assume 100% of Nestlings on a 'debt-free basis' without consideration to Candid Ventures' equity holdings in Nestlings." (*Id*. at ¶ 44; *see* Counterclaim, Doc. 27, ¶ 24.) Vora, as Nestlings' Preferred Director, rejected both offers.

(Am Ver. Compl., Doc. 20, ¶ 45; Counterclaim, Doc. 27, ¶ 22.)

Shortly after, on August 13, 2024, Nestlings' Board voted to dissolve the corporation. (Am Ver. Compl., Doc. 20, ¶ 46.) Vora agreed, as long as Nestlings gained Candid Ventures' approval, and Nestlings provide a winddown proposal with a list of company assets, accounts, and an order of the distribution of assets. (*Id*.) As Basavaraju and Satish began working on Nestlings' dissolution, they began itemizing the company's assets, including AdmitAlly. (Counterclaim, Doc. 27, ¶ 30.) During this process, Basavaraju and Satish discovered that Mindfully, another one of Vora's companies, was using AdmitAlly source code without consent. (*Id*.)

On September 13, 2024, Dew Ventures sent a letter to Nestlings and Vora demanding payment of the $334,000 debt, or alternatively, that Nestlings transfer all of its assets to Dew Ventures. (Am. Ver. Compl., Doc. 20, ¶ 48; Counterclaim, Doc. 27, ¶ 33.) That same day, Candid Ventures demanded repayment of its Notes, which were perfected first in time through filings with the California Secretary of State. (Am. Ver. Compl., Doc. 20, ¶ 49; UCC Search, Doc. 2, Pg. ID 141.) Basavaraju and Satish then held a Nestlings board meeting, which Vora did not attend. (Counterclaim, Doc. 27, ¶ 35.) At the meeting, Basavaraju and Satish agreed that Candid Ventures breached its fiduciary duties to Nestlings and was the cause of its insolvency. (*Id*.) Thus, the pair notified Candid Ventures that, over Vora's objection, it had rejected Candid Ventures' payment demand in favor of transferring all assets to Dew Ventures. (*Id*.; Am. Ver. Compl., Doc. 20, ¶ 51.) The following day, Candid Ventures wrote to Nestlings and Dew Ventures, notifying them that Candid Ventures' Notes have priority over Dew Ventures' Notes. (Am. Ver.

Compl., Doc. 20, ¶ 52.) Despite this notice, Nestlings and Dew Ventures agreed to "convey all of Nestlings' company assets to Dew Ventures." (*Id.* at ¶ 53.)

## PROCEDURAL HISTORY

On September 24, 2024, Candid Ventures brought this action, seeking a temporary restraining order—as well as extended injunctive relief—preventing the transfer of Nestlings' assets to Dew Ventures and a declaratory judgment voiding Dew Ventures' Notes. (*See* Compl., Doc. 1.) Candid Ventures also brought a breach of contract claim and a demand for accounting against Nestlings, breach of fiduciary duties and fraud claims against Basavaraju and Satish, and conspiracy claims against Nestlings, Basavaraju, and Satish. (*Id.*)

This Court granted a temporary restraining order on September 30, 2024, enjoining Nestlings from transferring any assets to Dew Ventures or a third party and preventing Nestlings from taking any corporate action to harm Candid Ventures as a shareholder. (Order Granting Temporary Restraining Order, Doc. 14.) On October 3, 2024, Candid Ventures moved for a preliminary injunction. (Motion for Preliminary Injunction, Doc. 15.) Candid Ventures later filed an amended verified complaint, adding a claim under the Ohio Uniform Fraudulent Transfer Act. (Am. Ver. Compl., Doc. 20.) Nestlings, Basavaraju, and Satish answered and filed a counterclaim against Candid Ventures and third-party claims against Vora and Mindfully for breach of fiduciary duty, breach of covenant of good faith and fair dealing, breach of contract, copyright infringement, unjust enrichment, and declaratory judgment. (Answer and Counterclaim, Doc. 27.)

Basavaraju and Satish then filed a Motion for Judgment on the Pleadings (Doc. 34). Afterward, the parties filed a Joint Motion to Stay to engage in settlement discussions (Doc. 51). In an attempt to prevent unnecessary litigation and promote judicial efficiency, the Court stayed the case in its entirety and ordered the parties to file a status report by February 14, 2024. (Order, Doc. 52.) Instead of filing a status report, however, the parties filed a Rule 26(f) report and proceeded as if the stay was lifted. (26(f) Report, Doc. 53; Joint Statement, Doc. 63, Pg. ID 1126.)

Since then, Nestlings filed a Notice of Bankruptcy Stay (Docs. 58, 59), arguing that any further proceedings involving Nestlings are stayed pursuant to 11 U.S.C. § 362. Moreover, Basavaraju and Satish moved to stay discovery (Doc. 62) until the Court rules on their Motion for Judgment on the Pleadings. The Court subsequently ordered the parties to provide supplemental briefing as to the effect of Nestlings' Notice. (5/01/2025 Notation Order.) The parties responded to the Court's Order (*See* Docs. 64, 65), and Candid Ventures and Vora filed a Response in Opposition to Nestlings' Motion to Stay Discovery (Doc. 66). Shortly after, Basavaraju, Satish, and Nestlings filed a Notice (Doc. 67) that the related bankruptcy case had been closed. Candid Ventures responded to this notice (Doc. 68), arguing that any stay related to Nestling's bankruptcy is now moot. Most recently, Attorneys Chedid and Wolofsky moved to withdraw as counsel for Nestlings, Basavaraju, and Satish (Doc. 70).

## LAW & ANALYSIS

At this juncture, there are several items pending on the docket. The Court will address each in turn.

I.    **Basavaraju and Satish's Motion for Judgment on the Pleadings**

Basavaraju and Satish move for judgment on the pleadings as to all of Candid Ventures' claims against them. (Motion, Doc. 34.) As an initial hurdle here, Candid Ventures argues that the motion is untimely. (Response, Doc. 38, Pg. ID 855.) Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "after the pleadings are closed." In practice, this timeframe translates to "after the filing of the complaints, answers, and any replies ordered by the court." *Forest Creek Townhomes, LLC v. Carroll Prop. Mgmt., LLC*, 695 F. App'x 908, 913 (6th Cir. 2017). Moreover, when a party files a counterclaim, crossclaim, or third-party claim, "the filing of a reply, cross-claim, or third-party answer will mark the close of the pleadings." *Signature Combs, Inc. v. United States*, 253 F. Supp. 2d 1028, 1030 (W.D. Tenn. 2003).

Here, Basavaraju and Satish filed their motion before Candid Ventures answered their counterclaims. Furthermore, Vora and Mindfully have not been served, let alone filed an answer to the third-party Complaint. Thus, the pleadings remain open, and Basavaraju and Satish's motion is untimely. *See, e.g., Permobil, Inc. v. Westphal*, No. 3:23-CV-586, 2024 U.S. Dist. LEXIS 136369, at *5 (M.D. Tenn. Aug. 1, 2024) (denying the defendant's motion because the plaintiff had not yet answered the counterclaims).

Basavaraju and Satish ask the Court to excuse their untimeliness. (Reply, Doc. 41, Pg. ID 865-66.) Indeed, "[c]ourts maintain discretion in certain circumstances to consider a 12(c) motion even when one of the defendants has not filed an answer." *Habeeba's Dance of the Arts, Ltd. v. Knoblauch*, No. 2:05-CV-926, 2006 U.S. Dist. LEXIS 18114, at *5-6 (S.D. Ohio Apr. 10, 2006). One such circumstance occurs "when a plaintiff fails to serve one of

the defendants." *Id.* at *6 (citing *Moran v. Peralta Community College Dist.*, 825 F. Supp. 891, 894 (N.D. Cal. 1993)). Courts have justified this exception because "[a] contrary reading of Rule 12(c) would mean that a plaintiff could forever preclude a 12(c) motion simply by naming and then not serving an additional defendant." *Thomas & Betts Int'l LLC v. Burndy LLC,* No. 2:14-CV-2296, 2015 U.S. Dist. LEXIS 139027, at *6 (W.D. Tenn. Oct. 13, 2015) (quoting *Moran*, 825 F. Supp. 891 at 894).

This is not what occurred here. The pleadings do not remain open because Candid Ventures is attempting to preclude a judgment on the pleadings. Instead, the pleadings remain open on Basavaraju and Satish's own accord; they have failed to serve Vora and Mindfully. Moreover, this exception has not been recognized by the Sixth Circuit. For these reasons, the Court must deny the motion.

Basavaraju and Satish also argue that rather than denying their motion, the Court may convert it to a Rule 12(b)(6) motion to dismiss. (Reply, Doc. 41, Pg. ID 867.) "[D]istrict courts have discretion to convert a premature Rule 12(c) motion into a Rule 12(b)(6) motion and rule on it." *Sprouse v. Mitchell*, No. 1:23-CV-353, 2024 U.S. Dist. LEXIS 136405, at *5 (S.D. Ohio, Aug. 1, 2024), *report and recommendation adopted,* No. 1:23-CV-353, 2024 U.S. Dist. LEXIS 159746 (S.D. Ohio, Sept. 4, 2024). But for now, the Court declines to convert the motion to allow for further briefing on Basavaraju and Satish's arguments.

## II.     Candid Ventures' Motion to Dismiss Counterclaim

The Court now looks to Candid Ventures' Motion to Dismiss Basavaraju, Satish, and Nestlings' ("Counterclaimants") counterclaims, addressing each one of Candid Ventures' arguments in turn. (Motion, Doc. 46.)

a. **Breach of Fiduciary Duty**

The Court will begin its analysis with Counterclaimants' claim for breach of fiduciary duty. To determine which law governs this claim, the Court looks to Ohio law which applies the internal affairs doctrine. *Heine v. Streamline Foods, Inc.*, 805 F. Supp. 2d 383, 389 (N.D. Ohio 2011). This doctrine "provides that the law of the state of incorporation governs the internal affairs of a corporation." *Id.* Moreover, the fiduciary duties owed by the directors of a corporation are internal affairs. *Id.* Since Nestlings is a California corporation, California law applies to this counterclaim. (Am. Ver. Compl., Doc. 20, ¶ 4; Answer, Doc. 27, ¶ 4.) Under California law, the elements for a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." *Graham-Sult v. Clainos*, 719 F. App'x 562, 567 (9th Cir. 2017) (quotation omitted). However, the Court may also "properly rely on corporate law developed in the State of Delaware given that it is identical to California corporate law for all practical purposes." *Oakland Raiders v. NFL*, 93 Cal. App. 4th 472, 586 n.5 (Cal. Ct. App. 2001); *Charter Township of Clinton Police & Fire Retirement System v. Martin*, 219 Cal. App. 4th 924, 942 (Cal. Ct. App. 2013).

Candid Ventures first argues for dismissal by stating that it did not owe Nestlings a fiduciary duty. (Motion, Doc. 46, Pg. ID 906.) In response, Nestlings contends that this argument is premature for this stage of litigation. (Response, Doc. 48, Pg. ID 973-74.) "A shareholder owes a fiduciary duty only if it owns a majority interest in or exercises control over the business affairs of the corporation." *Ivanhoe Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Delaware 1987). Since Candid Ventures was not a majority

shareholder, it must have exerted control over Nestlings to owe a fiduciary duty. At the motion to dismiss stage, "whether or not a particular CEO and sizeable stockholder holds more practical power than is typical should not be decided . . . if a plaintiff pleads facts sufficient to raise the inference of control." *In re Zhongpin Inc. Stockholders Litig.*, No. 7393, 2014 Del. Ch. LEXIS 252, at \*26 n.33 (Del. Ch. Nov. 26, 2014). Here, Counterclaimants allege that Candid Ventures retained control over Nestlings, dictating its ability to raise financing. (Counterclaim, Doc. 27, ¶ 39.) This control materialized through Candid Ventures and Vora's blocking of a potential investment from Dew Ventures. (*Id.* at ¶ 24.) Counterclaimants further allege that this was an effort to foreclose the company, allowing Vora to purchase Nestlings for one dollar. (*Id.*) Considering these allegations in the light most favorable to Counterclaimants, the Court finds that they sufficiently raise an inference of control. *See Williamson v. Cox Communs., Inc.*, No. 1663-N, 2006 Del. Ch. LEXIS 111, at \*23 (Del. Ch. June 5, 2006) ("The question whether a shareholder is a controlling one is highly contextualized and is difficult to resolve based solely on the complaint."); *Calesa Assocs., L.P. v. Am. Capital, Ltd.*, No. 10557, 2016 Del. Ch. LEXIS 41, at \*36 (Del. Ch. Feb. 29, 2016) ("[T]here is no magic formula to find control; rather, it is a highly fact specific inquiry."). Thus, the Court will permit the breach of fiduciary duty claim to proceed.

### b. Breach of the Covenant of Good Faith and Fair Dealing

The Court next looks at Counterclaimants' breach of the covenant of good faith and fair dealing claim. Counterclaimants allege that Candid Ventures violated the covenant of good faith and fair dealing implied within the IRA by exercising its right to

block Dew Venture's potential investment. (Counterclaim, Doc. 27, ¶¶ 43-46.) Candid Ventures moves to dismiss this claim arguing that Counterclaimants are imposing additional duties beyond the specific terms of the IRA. (Motion, Doc. 46, Pg. ID 45-46.) As a preliminary matter, the IRA has a California choice of law provision. (IRA, Doc. 20-3, Pg. ID 335.) Thus, the Court will employ California law in its analysis.

Under California law, "[i]t is well settled that an implied covenant of good faith and fair dealing cannot contradict the express terms of a contract." *Bevis v. Terrace View Partners, LP*, 33 Cal. App. 5th 230, 252 (Cal. Ct. App. 2019) (quotation omitted). Accordingly, if the contract's provisions authorize certain conduct, the performance of that conduct does not breach the covenant of good faith and fair dealing. *Id.* at 253; *Avidity Partners, LLC v. State of California*, 221 Cal. App. 4th 1180, 1204 (Cal. Ct. App. 2013). Here, the parties agree that Candid Ventures' use of its blocking rights were authorized and did not violate a term of the IRA. (Motion, Doc. 46, Pg. ID 911; Response, Doc. 48, Pg. ID 980.) Since Candid Ventures' alleged conduct did not violate the IRA's express provisions, Counterclaimants' breach of the covenant of good faith and fair dealing claim fails.

### c. Breach of Contract

Next, the Court will examine Counterclaimants' breach of contract claim. The Court notes that Counterclaimants' allegations supporting this claim are sparse. Counterclaimants simply plead that "[Counterclaimants] and [Candid Ventures] had a contract," "[Counterclaimants] performed on their contract," and that Candid Ventures "promised to convey assets, but retained the [AdmitAlly] source code in breach of the

12

parties' contract." (Counterclaim, Doc. 27, ¶¶ 48-50.)

Candid Ventures argues that it fulfilled all its obligations under the contract and that Nestlings cannot point to a single term Candid Ventures breached. (Motion, Doc. 46, Pg. ID 913.) Counterclaimants argue that at this stage the Court is unable to examine the Preferred Stock Purchase Agreement to determine whether Candid Ventures fulfilled its obligations. (Response, Doc. 48, Pg. ID 981.) Generally, "a Rule 12(b)(6) motion should be decided solely on the complaint." *Diei v. Boyd,* 116 F.4th 637, 643 (6th Cir. 2024) But, there is an exception to this rule: a court may review "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.* (cleaned up). When determining whether the documents are central to the complaint's claims, "it must also be clear that there exists no material disputed issues of fact regarding the relevance of the documents." *Id.* at 644 (quotation omitted). Further, "a district court should not rely on documents at the motion-to-dismiss stage if their authenticity is disputed." *Moyer v. Gov't Emps. Ins. Co.,* 114 F.4th 563, 568 (6th Cir. 2024).

Here, although the breach of contract claim does not explicitly state which contract Candid Ventures allegedly breached, it does refer to a contract where Candid Ventures "promised to convey assets, but retained the source code," suggesting that Counterclaimants intend to allege that Candid Ventures breached the Preferred Stock Purchase Agreement. (Counterclaim, Doc. 27, ¶ 50.) Counterclaimants' Response also cites to provisions of the Preferred Stock Purchase Agreement, further evidencing that the Counterclaim refers to an alleged breach of this contract. (Response, Doc. 48, Pg. ID

982.) Given these considerations, the Court finds that Counterclaimants' breach of contract claim refers to the Preferred Stock Purchase Agreement. As no party has disputed the relevancy or authenticity of the agreement, the Court will incorporate the Preferred Stock Purchase Agreement into its analysis of the breach of contract claim. *See Turman v. Select Portfolio Servicing, Inc.*, No. 2:23-CV-903, 2023 U.S. Dist. LEXIS 190709, at *5 (S.D. Ohio Oct. 24, 2023) (considering the contents of a contract when the plaintiff's claim arose from the contractual relationship between the parties).

As the Preferred Stock Purchase Agreement contains a forum selection clause for California, the Court will again employ California law in its substantive analysis. (Preferred Stock Purchase Agreement, Doc. 46-1, Pg. ID 934.) Under California law, the elements of a breach of contract claim are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (Cal. Sup. Ct. 2011).

Candid Ventures argues that even if it continued to use the source code after transferring AdmitAlly to Nestlings, this would not be a breach of the Preferred Stock Purchase Agreement. (Motion, Doc. 46, Pg. ID 913.) The Court agrees. The Preferred Stock Purchase Agreement plainly states that "[Candid Ventures] shall cause its wholly-owned subsidiary, AdmitAlly, LLC, to enter into the Securities Transfer Agreement, pursuant to which all outstanding capital stock of [AdmitAlly] will be sold to the [Nestlings]." (Preferred Stock Purchase Agreement, Doc. 46-1, Pg. ID 918.) Counterclaimants do not contest that Candid Ventures has fulfilled this obligation. (Counterclaim, Doc. 27, ¶¶ 8,

30.) The breach of contract claim is dictated upon Candid Ventures' continuing use of the source code, but Counterclaimants have not pointed to a single provision of the Preferred Stock Purchase Agreement that prohibits Candid Ventures from doing so. Without a breach, Counterclaimants have failed to allege the third element of their claim. Thus, Counterclaimants' breach of contract claim fails.

### d. Declaratory Judgment

Candid Ventures last moves to dismiss the counterclaim for a declaratory judgment. (Motion, Doc. 46, Pg. ID 915.) Counterclaimants seek a declaration from this Court that Candid Ventures' claim to Nestlings' assets is equitably subordinated to Dew Ventures' claim. (Counterclaim, Doc. 27, ¶ 69.) The doctrine of equitable subordination, however, only applies in bankruptcy proceedings. *Gaff v. FDIC*, 919 F.2d 384, 393 (6th Cir. 1990); *Gaymar Indus. v. FirstMerit Bank, N.A.*, 311 F. App'x 814, 817 (6th Cir. 2009); *At Law Grp., PPLC v. Allstate Ins. Co.*, 461 F. Supp. 3d 610, 618 (E.D. Mich. 2020). As this Court cannot employ this doctrine, the counterclaim for declaratory judgment is dismissed.

### III. Candid Ventures' Motion for Reconsideration

The Court next turns to Candid Ventures' Motion for Reconsideration on the Court's Order Denying a Preliminary Injunction (Doc. 49). Candid Ventures initially sought injunctive relief to freeze all of Nestlings' assets so that they may not be transferred to Dew Ventures. (Motion for Preliminary Injunction, Doc. 15, Pg. ID 208.) The Court denied this motion, however, because there was no evidence that Nestlings retained any assets to freeze. (Order, Doc. 44, Pg. ID 898.) Candid Ventures now asks this Court to reconsider its denial and to impose sanctions on Nestlings. (Motion, Doc. 49.)

To prevail on a motion for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure, a party must demonstrate either: (1) a clear error of law, (2) newly discovered evidence, (3) an intervening change in controlling law, or (4) a need to prevent manifest injustice. *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). Relief under this rule, however, is an "'extraordinary remedy' reserved for exceptional cases" that fit squarely within one of the four situations outlined above. *Hines v. Comm'r of Soc. Sec.*, 414 F. Supp. 3d 1080, 1081 (S.D. Ohio 2019) (quoting *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008)). Importantly, a Rule 59(e) motion is not an opportunity "to re-hash old arguments or to advance positions that could have been argued earlier, but were not." *Gulley v. Cty. of Oakland*, 496 F. App'x 603, 612 (6th Cir. 2012).

Candid Ventures argues for reconsideration, stating that it has provided newly discovered evidence that Nestlings still retains some assets, most notably, its shares in Feathers Up India Pvt Ltd ("Feathers Up"). (Motion, Doc. 49, Pg. ID 992.) Candid Ventures specifically points to a declaration that Suresh Deopura provided in a related lawsuit between the parties in the Northern District of California. (*Id.*) The declaration provides that on September 19, 2024, Nestlings initiated the transfer of all its Feathers Up shares to Dew Ventures. (Declaration, Doc. 49-1, Pg. ID 995.) This transfer, however, had not been perfected as of November 26, 2024. (*Id.*) Candid Ventures interprets this declaration to mean that Nestlings is still in possession of its Feathers Up shares and that Nestlings thereby made a misrepresentation to this Court. (Motion, Doc. 49, Pg. ID 991.)

What Candid Ventures fails to acknowledge, however, is that Nestlings had provided this information before the Court denied Candid Venture's Motion for

Preliminary Injunction. After the hearing on Candid Venture's motion, Nestlings provided a Supplemental Brief stating that "for one or more assets, additional documents or filings may be required to perfect the transfer of ownership from Nestlings to Dew Ventures." (Supplemental Brief, Doc. 36, Pg. ID 848.) Thus, Deopura's Declaration does not provide new evidence but instead merely restates a fact already presented to the Court. Thus, this is not one of those "exceptional cases" that warrants relief. *Hines*, 414 F. Supp. 3d at 1081. Candid Ventures also asks the Court to impose sanctions on Nestlings because it believes that Nestlings made material misrepresentations to the Court. (Motion, Doc. 49, Pg. ID 992-93.) As the Court has already determined that Nestlings did not misrepresent its possession of assets, the Court declines to further analyze Candid Ventures' request.

## IV. The Bankruptcy Stay

Nestlings notified the Court that on April 24, 2024, it had filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of California. (*See* Notice, Doc. 58; Revised Notice, Doc. 59.) "Section 362 of the Bankruptcy Code automatically stays certain proceedings when a debtor files for bankruptcy." *McDuff v. Anderson*, No. 24-1798, 2025 U.S. App. LEXIS 8493, at *2 (6th Cir. Apr. 9, 2025) (citing 11 U.S.C. § 362(a)). The automatic stay, however, "does not survive the dismissal of a bankruptcy petition." *Banks v. Wells Fargo Bank, N.A.*, No. 17-11968, 2018 U.S. Dist. LEXIS 30166, at *5 (E.D. Mich. Feb. 26, 2018). Here, Basavaraju, Satish, and Nestlings—in addition to Candid Ventures—have notified this Court of the dismissal of Nestlings' bankruptcy petition. (Notice, Doc. 67; Notice, Doc. 69.) Thus, any bankruptcy stay

17

pertaining to this matter is lifted.

## V. Satish and Basavaraju's Motion to Stay Discovery

Satish and Basavaraju filed a Motion to Stay Discovery (Docs. 60, 62) until this Court ruled on their Motion for Judgment on the Pleadings (Doc. 34). As this Order rules on the Motion for Judgment on the Pleadings, Satish and Basavaraju's Motion to Stay Discovery (Docs. 60, 62) is denied as moot.

## VI. The Parties' Jointly Requested Stay and Counsel's Motion to Withdraw

The parties jointly requested to stay this case on December 10, 2024, to engage in settlement discussions. (Joint Motion, Doc. 51.) The Court subsequently granted the stay two days later. (Order, Doc. 52.) This stay remains in effect. As the parties have continuously filed motions during the stay, however, the Court liberally construes the parties' conduct to conclude that the settlement discussions were unsuccessful and that they intend to proceed in litigating this matter. (*See* Joint Statement, Doc. 63, Pg. ID 1126.) More recently, though, Attorneys Jed Chedid and Charles Wolofsky, counsel for Nestlings, Basavaraju, and Satish moved to withdraw. (Motion, Doc. 70.) Attorneys Chedid and Wolofsky's motion explained that they seek to withdraw because their clients do not intend to pay them for past or future legal fees. (*Id.* at Pg. ID 1397.)

When determining whether to permit counsel to withdraw, the Court weighs the prejudice to counsel against the prejudice to the client or third parties. *See Brandon v. Blech*, 560 F.3d 536, 539 (6th Cir. 2009). "[C]ompelling attorneys to continue representing clients who refuse to pay imposes a severe burden" and constitutes a "weighty policy reason to allow withdrawal." *Id.* at 538. Attorneys Chedid and Wolofsky have therefore shown

18

sufficient prejudice to justify their withdrawal as counsel and may be removed as attorneys of record for Nestlings, Basavaraju, and Satish. That said, Nestlings is a corporation. In federal court, a corporate entity may not represent itself; it may only appear through an attorney. *See Doherty v. Am. Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984). This matter cannot proceed substantively until new counsel enters an appearance on behalf of Nestlings. Accordingly, continuing the stay is proper to provide Nestlings time to retain new counsel. Nestlings is advised that it must promptly seek counsel to represent it in this litigation, as the other parties are entitled to a timely resolution of this matter. Nestlings' failure to retain counsel within a reasonable timeframe may result in adverse consequences. *See Cabatech, LLC v. Nextlight, LLC*, No. 1:22-CV-59, 2024 U.S. Dist. LEXIS 43624, at *2-3 (S.D. Ohio Mar. 12, 2024).

## CONCLUSION

For the foregoing reasons, the Court orders the following:

I.   Basavaraju and Satish's Motion for Judgment on the Pleadings (Doc. 34) is **DENIED WITHOUT PREJUDICE**;

II.  Candid Ventures' Motion to Dismiss Counterclaims (Doc. 46) is **GRANTED IN PART AND DENIED IN PART**;

   a. Counterclaimants' breach of fiduciary duty claim **SHALL PROCEED**;

   b. Counterclaimants' breach of good faith and fair dealing claim is **DISMISSED**;

   c. Counterclaimants' breach of contract claim is **DISMISSED**;

   d. Counterclaimants' declaratory judgment claim is **DISMISSED**;

III.    Candid Ventures' Motion for Reconsideration (Doc. 49) is **DENIED**;

IV.    Basavaraju and Satish's Motions to Stay Discovery (Docs. 60, 62) are **DENIED AS MOOT**;

V.    Attorneys Chedid and Wolofsky's Motion to Withdraw (Doc. 70) is **GRANTED.** Attorneys Chedid and Wolofsky **SHALL BE REMOVED** as attorneys of record for Nestlings, Basavaraju, and Satish; and

VI.    The stay on this matter **SHALL CONTINUE** for an additional twenty-one (21) days from the date of this Order so that Nestlings may obtain new legal counsel. Nestlings' failure to retain counsel within this timeframe may result in adverse consequences.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND